IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ELDEN WOLFORD,

        Plaintiff,

v.                                                    CIVIL ACTION NO. 3:21-0592

CARDINAL HEALTH 414, LLC,

        Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Elden Wolford's Motion for Summary Judgment on Liability, ECF No. 45, and Defendant's Motion for Summary Judgment, ECF No. 51. For the reasons below, the Court **DENIES** both Motions. ECF Nos. 45, 51.

### BACKGROUND

In the instant suit, Plaintiff Elden Wolford raises a series of claims against Defendant Cardinal Health following the company's termination of his employment. Am. Compl., ECF No. 23. Defendant is a healthcare services company that distributes pharmaceutical and medical products. *Id.* ¶ 2. As a Nuclear Pharmacy Technician, Plaintiff was responsible for helping pharmacists prepare medications for distribution to hospitals. Wolford Dep. 17:24, 18:1-3, ECF No. 52. He had been employed by Cardinal Health since 2004. Am. Compl. ¶ 4, ECF No. 23.

There is no evidence of any serious performance or workplace issues involving Defendant until July 2021, Christian Dep. 41:4-21, ECF No. 45-8, when a vehicle owned by James Christian, the nuclear pharmacy supervisor, was vandalized while parked at the nuclear pharmacy. *Id.* 25:20-24, 26:1-2, ECF No. 45-8. Mr. Christian identified Plaintiff as a possible suspect—another

employee reported seeing Plaintiff in the area where the vandalism had occurred, and a deputy sheriff responding to the incident said he was "99 percent sure" the vandalism was committed by a pharmacy employee. *Id.* 26:15-24, 49:6-15, 72:17-21. Plaintiff's "call pay" had been taken away around that time, *id.* 35:1-9, which resulted in a loss of about $100 per week, Wolford Dep. 19:18-19, ECF No. 45-4.

Defendant assigned a security officer to conduct an investigation and interview employees. Padro Dep. 34:1-2, ECF No. 51-4. On August 26, 2021, the week before the interviews were conducted, Mr. Christian texted pharmacy employees, including Plaintiff, to notify them that paid time off (PTO) would not be approved for the following week. Wolford Dep. 97:3-9. Plaintiff was absent the week of the interviews, so he was never interviewed as part of the vandalism investigation. Padro Dep. 34:3-7, ECF No. 51-4. The security officer concluded that he could not ascertain who had committed the vandalism. *Id.* 60:16-21.

Though Plaintiff remembers receiving the text message regarding PTO on August 26, 2021, *id.*, he had notified Mr. Nelson, his direct supervisor, the day before that his wife was ill and he would not be able to come to work that evening, Wolford Ex. B, ECF No 51-2 at 31. The next day, Plaintiff notified Mr. Nelson that he would need to take the rest of the week off to provide care for his wife. *Id.* at 32-33. Mr. Nelson responded that he would enter sixteen hours of PTO into the system. *Id.* Following a series of text messages between Plaintiff and Mr. Nelson, Plaintiff notified Mr. Nelson that he would "not be back for a bit" and would call HR to start the FMLA process on Monday, August 30, 2021. *Id.* at 35-36.

Plaintiff called HR on August 30, 2022, to discuss taking FMLA leave, and Defendant emailed the necessary FMLA packet to Plaintiff that same day. FMLA Packet, ECF No. 45-2. The FMLA packet specified that Plaintiff would need to return the paperwork back by September 14,

2021, so that Defendant could determine whether the absence qualified for FMLA leave. *Id.* The FMLA packet was sent to Plaintiff's personal email, which he had provided to the HR representative. MJ Call Transcript 5:21-24, 6:3-18, ECF No. 51-7; Wolford Dep. 54, 54:8-10, ECF No. 51-2. However, Plaintiff did not access this email account and was unaware the FMLA packet had been sent. Wolford Dep. 54: 2-7, ECF No. 51-2.

On September 7, 2021, Plaintiff called the HR department and asked "Michael," an HR specialist, to cancel his FMLA request as of September 13, 2021. Michael Call Transcript 3:18-21, 3:24-25, ECF No. 49-3. Plaintiff said he wanted to apply PTO on any time already missed, so that he would receive pay for his absences. *Id.* "Michael" informed Plaintiff that FMLA approval was still pending, so if Plaintiff wanted to be covered for days he had already missed, he would need to return the FMLA paperwork—Plaintiff, however, never returned this paperwork. *Id.* 4:4-13. Later that day, a leave specialist, Ms. Highley, contacted Plaintiff to confirm that he wanted to cancel his FMLA request. Highley Call Transcript 2:14-15, ECF No. 49-3. Plaintiff once again expressed a desire to cancel his FMLA request and use PTO for any time he had missed. *Id.* 3:12-18. Ms. Highley asked Plaintiff whether he had checked with this supervisor about taking PTO, and Plaintiff indicated that he had. *Id.* 3:19-23. Though Ms. Highley cautioned that Plaintiff would have to open a new case should this one be cancelled, Plaintiff noted that if he was out of PTO, he would just "take [the time missed] unpaid." *Id.* 5:3-6, 5:18-22. Plaintiff asked Ms. Highley about obtaining a release so that he could return to work, but she notified him that he did not need one he was not the one with the serious condition. *Id.* 4:4-17.

Defendant then cancelled the FMLA request and opened a Corrective Action form regarding Plaintiff's absences, as Plaintiff had no remaining PTO to cover his missed time. Defendant's attendance policy provides that four unscheduled absences would lead to corrective

action, including possible termination. Dangler Dep. 56:17-20, ECF No. 51-10. However, this policy exempts employees granted a leave of absence under the FMLA. *Id.* 56:21-24, 57:1-2. Defendant determined that the eight absences resulting from Plaintiff's wife's illness were unexcused because Plaintiff "did not have approved leave for these days after he indicated he would not be taking leave pursuant to the FMLA." Int. No. 7, ECF No. 45-10. Defendant suspended Plaintiff and made the determination to terminate his employment on September 10, 2021. Request for Admission Nos. 14-15, ECF No. 45-1.

Plaintiff was notified of his termination via phone call on September 14, 2021. *Id.* No. 16. The Occurrence-Based Corrective Action form issued that day lists two issues supporting termination: on top of the eight absences, Defendant noted, "there have been major security issues at the pharmacy during this time period and you were seen in the area." Occurrence-Based Corrective Action at 1, ECF No. 45-5. The individual completing the form also claimed to not be aware of any FMLA occurrences related to the leave. *Id.* at 21. Though Defendant maintains that Plaintiff was fired due to his allegedly unexcused absences, a former employee of Cardinal Health informed Plaintiff that he had heard Plaintiff was terminated due to vandalism allegations. Wolford Dep. 102:5-7, ECF No. 45-4, Dempsey Dep. 28:2-8, ECF No. 53-3. Plaintiff admits that he did not experience any negative effects due to this accusation, nor is he aware of any other statements connecting him to the vandalism. *Id.* 102:23-24, 103:1-19.

Plaintiff raises four counts against Defendant in his Amended Complaint, including interference with his rights under the FMLA (Count I) in violation of 29 U.S.C. § 2615(a)(1); retaliation for exercising rights and engaging in protected conduct under the FMLA (Count II) in violation of 29 U.S.C. § 2615(a)(2); common law retaliatory discharge (Count III); and defamation (Count IV). Am. Compl., ECF No. 23. In its Motion for Summary Judgment, Defendant argues

that summary judgment is warranted on all counts premised on the FMLA because Plaintiff was not covered by the FMLA at the time of his termination. Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 10-11, ECF No. 52. In the alternative, Defendant argues that the FMLA interference claim fails because there was no interference with Plaintiff's FMLA rights, and the FMLA retaliation claim fails because Plaintiff cannot make a prima facie case that Defendant's proposed reasons behind termination are pretextual. *Id.* at 10, 13. As to the defamation claim, Defendant argues that there is no link between Defendant and defamatory statements, nor was Plaintiff harmed by these statements. *Id.* at 16-18.

Plaintiff, in his Motion for Summary Judgement, argues that summary judgment is appropriate only as to liability under the FMLA. Pl.'s Mem. in Supp. for Summ. J. on Liability at 1, ECF No. 46. Plaintiff contends that Defendant interfered with his FMLA rights by denying him coverage under the statute and later terminating his employment. *Id.* at 15-16. As to the FMLA and state law retaliation claims, Plaintiff argues that summary judgment is warranted because Defendant based his termination on the same absences that supported his FMLA claim. *Id.* at 17. Finally, as to the defamation claim, Plaintiff does not request summary judgment, alleging that it is a question of fact for the jury. *Id.* at 18 n.6.

## STANDARD

Summary judgment is appropriate where the moving party shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts

in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

This standard also applies when courts are faced with cross-motions for summary judgment. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983). In such instances, courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). During each individual inquiry, courts must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing the motion. *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir.1996)).

## ANALYSIS

When reviewed separately and on their individual merits, neither Motion establishes that summary judgment is appropriate. While the parties agree on many of the operative facts, there are still some facts in dispute. Moreover, even where the facts are agreed upon by both parties, reasonable jurors could draw inferences in favor of either party based on those facts.

Counts I, II, and III are all premised on alleged violations of the FMLA. The FMLA grants certain employees the right to take up to twelve workweeks of leave during any 12–month period to, *inter alia*, care for a spouse with a serious health condition. 29 U.S.C. § 2612(a)(1)(C). "When returning from FMLA leave, an employee is . . . entitled to be restored to his previous position or an equivalent position, so long as he would have retained that position or an equivalent one absent the taking of leave." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 426 (4th Cir. 2015). (citing *Yashenko v. Harrah's NC Casino Co.,* 446 F.3d 541, 546–47 (4th Cir. 2006)). The FMLA bars employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise [an employee's FMLA rights]," 29 U.S.C. § 2615(a)(1), as well as "discharg[ing] or in any other manner discriminat[ing] against any individual" for exercising these rights," 29 U.S.C. § 2615(a)(2).

Count I, interference with FMLA rights, requires Plaintiff to establish that "1) he is entitled to an FMLA benefit; 2) his employer interfered with the provision of that benefit; and 3) that interference caused harm." *Adams*, 789 F.3d at 427. Similarly, Count II, alleging retaliation against Plaintiff for exercising his FMLA rights, requires Plaintiff to demonstrate that "1) [he] engaged in a protected activity, 2) [his] employer took an adverse employment action against [him]; and 3) there was a causal link between the two events." *Id.* at 429. Finally, Count III alleges a common law violation of public policy that is premised on retaliation under the FMLA, as the FMLA does not preempt state law claims. *Vandevander v. Verizon Wireless, LLC*, 149 F. Supp. 3d 724, 728 (S.D.W. Va. 2016).

Starting with Plaintiff's Motion for Summary Judgment as to Counts I, II, and III, the Court finds that, viewing the underlying facts in a light most favorable to the nonmoving party, Plaintiff has not established that Defendant interfered with or retaliated against Plaintiff regarding his

FMLA rights as a matter of law. Questions of material fact remain as to what information Plaintiff gave to Defendant regarding his request for leave, whether Plaintiff sought to confirm the status of his PTO before cancelling the FMLA request, and whether Plaintiff met his obligations under the FMLA when he failed to return his paperwork and cancelled the FMLA request. Because a reasonable trier of fact could come to different inferences in light of the facts presented, judgment in favor of Plaintiff is not warranted as a matter of law.

Continuing to Defendant's Motion for Summary Judgment as to these counts, the Court does not agree that, as a matter of law, Plaintiff sacrificed all FMLA rights when he sought to prospectively cancel the FMLA request. Namely, Defendant points to a series of cases for the proposition that Defendant lost FMLA protection as soon as he asked to cancel his FMLA request. Def.'s Resp. in Opp. to Pl.'s Mot. for Summ. J. at 9, ECF No. 49; Mem. of Law in Supp. of Def.'s Mot. for Summ J. at 10-11, 14, ECF No. 52. However, these cases are inapposite—they all involve plaintiffs who declined to start FMLA leave at all, while here, Plaintiff submitted a request and began leave, and later communicated a desire to use FMLA if he did not have enough PTO to cover missed time. Nor does the Court agree with Defendant's claim that there are no facts supporting interference with or retaliation based on Plaintiff's FMLA rights. Rather, in this case, issues such as whether Defendant met its obligations under the FMLA when it failed to inform Plaintiff of his potential termination or whether it took an adverse action against Plaintiff based on a protected activity are appropriately determined by a jury.

Finally, the Court denies Defendant's Motion for Summary Judgment as to the defamation claim (Count IV). "The essential elements for a successful defamation action by a private individual are 1) defamatory statements; 2) a nonprivileged communication to a third party; 3) falsity; 4) reference to the plaintiff; 5) at least negligence on the part of the publisher; and 6)

resulting injury." *Belcher v. Wal-Mart Stores, Inc.*, 568 S.E.2d 19, 26 (W.Va. 2002) (quoting Syl. Pt. 1, *Crump v. Beckley Newspapers*, 320 S.E.2d 70 (W.Va. 1983)).

Only Defendant alleges that summary judgment is appropriate as to this claim, arguing that Plaintiff lacks evidence that Defendant published a defamatory statement about him. Pl.'s Mem. in Supp. for Summ. J. on Liability at 18 n.6, ECF No. 46; Mem. of Law in Supp. of Def.'s Mot. for Summ J. at 16, ECF No. 52. Defendant contends that Defendant is not liable for the statements of a non-managerial employee, as the company did not authorize or ratify these statements. *Id.* at 17. In the alternative, Defendant argues summary judgment is appropriate because Plaintiff has not been harmed by any alleged defamation. *Id.* at 18. Defendant points out that Plaintiff only learned he had been connected to the vandalism in January 2022 and admitted that he did not experience any negative effects from these statements. *Id.*

These arguments do not hold weight. The evidence, when viewed in the light most favorable to Plaintiff, raises questions for the jury as to whether Defendant published a defamatory statement about Plaintiff and whether that statement caused harm. As to the publication issue, "direct defamatory statements are not an absolute prerequisite to recovery"—rather, defamation can also be accomplished through "inference, implication, innuendo, or insinuation." Pl.'s Resp. to Def.'s Mot. and Mem. for Summ. J. at 8, ECF No. 53 (quoting Syl. Pt. 4, *Crump*, 320 S.E.2d at 70). As to the issue of damages, a jury could find that Plaintiff was harmed by the defamatory statement, on the basis that it impacted Defendant's decision to terminate his employment. Drawing any permissible inference from the underlying facts in the light most favorable to Plaintiff, the Court finds that Defendant is not entitled to judgment as a matter of law as to Count IV.

## CONCLUSION

For the reasons stated above, the Court **DENIES** both Plaintiff's and Defendant's Motions for Summary Judgment. ECF Nos. 45, 51.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:	March 1, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE